IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT KUKLINSKI, JR.,<br><br>                Petitioner,<br><br>      vs.<br><br>WILLIAM LEE, Superintendent, Eastern New York Correctional Facility,<br><br>                Respondent. | No. 9:16-cv-01070-JKS<br><br>MEMORANDUM DECISION |

       Robert Kuklinski, Jr., a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Kuklinski is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Eastern New York Correctional Facility. Respondent has answered the Petition, and Kuklinski has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

       In June 2003, Kuklinski was charged with first-degree sodomy, first-degree sexual abuse, sexual misconduct, forcible touching, and endangering the welfare of a child. Kuklinski moved to suppress an oral and written statement he had given to law enforcement, and a suppression hearing was held. The judge denied Kuklinski's motion based upon his finding that Kuklinski was properly advised of his *Miranda*[1] rights and made a knowing and intelligent waiver of those rights.

       After the denial of his suppression motion, Kuklinski again appeared in court, represented by counsel, to plead guilty to all charges. The court informed Kuklinski:

---

       [1]      *Miranda v. Arizona*, 384 U.S. 436 (1966)

> Now, with respect to a sentence that is to be imposed in this matter, I have indicated to your attorney based on the previous offer that was made by Judge Bruhn in this matter, that being 14 years—a definite sentence of 14 years in a state correctional facility followed by five years' post-release supervision, I have indicated to your attorney, that in no event were you to plead guilty to this charge, that you would receive less than 14 years plus five years post-release supervision. And it may be more. Do you understand that?

Kuklinski answered affirmatively, and again answered affirmatively when the court asked, "And understanding that, you wish to continue your plea of guilty?" Kuklinski then confirmed that no one had threatened him or made other promises, and he had not been forced into entering his guilty plea. Kuklinski also acknowledged that he understood the rights he would be waiving by pleading guilty, including his rights to a trial by jury, to cross-examine witnesses, and to testify on his own behalf. He stated that he understood that, by pleading guilty, he was admitting the crime and that his plea had the same force and effect as a finding of guilt by a jury after trial. After confirming that he understood the rights he was giving up, he again stated that he wished to continue his guilty plea.

Nearly three weeks later, Kuklinski moved to withdraw his guilty plea based on the availability of a new witness who would testify on his behalf. After determining that the witness's proffered testimony would largely be inadmissible and thus of "very little consequence," the court denied the motion. The court then sentenced Kuklinski to an aggregate imprisonment term of 24 years plus 5 years of post-release supervision, calculated as follows: a determinate term of one year imprisonment on the charges of endangering the welfare of a child, forcible touching, and sexual misconduct, and two determinate imprisonment terms of 24 years and 5 years of post-release supervision on the first-degree sodomy and first-degree sexual abuse charges, all sentences to run concurrently.

On December 9, 2004, Kuklinski appeared for resentencing. The court explained:

> At the time of the original sentence on the second count of the indictment I sentenced Mr. Kuklinski to a definite sentence of 24 years to be followed by five years post release supervision. That sentence was an illegal sentence in that pursuant to Criminal Procedure Law 70.07, the maximum sentence that I could have sentenced Mr. Kuklinski to on the second count of the indictment would have been a definite sentence ranging between five and 15 years.

Defense counsel then renewed Kuklinski's request to withdraw his guilty plea based on the availability of the witness. The court again denied the motion and imposed a determinate sentence of 15 years followed by 5 years of post-release supervision on the second count.[2]

Through counsel, Kuklinski appealed his conviction, arguing that: 1) the trial court erred in denying his motion to suppress his statement to law enforcement; and 2) the sentence imposed violated the plea bargain agreement and was harsh and excessive. The Appellate Division of the New York Supreme Court unanimous affirmed Kuklinski's conviction in a reasoned opinion issued on December 22, 2005. *People v. Kuklinski*, 805 N.Y.S.2d 729, 731 (N.Y. App. Div. 2005).

Kuklinski filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on November 14, 2016. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Kuklinski argues that: 1) his guilty plea was not knowingly, voluntarily, or intelligently made; 2) the trial court erred in denying his suppression motion; and 3) his sentence was harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

---

[2] Because his sentences ran concurrently, the aggregate term of his sentence did not change as a result of re-sentencing on Count 2.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim

4

not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Kuklinski has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A.  Timeliness

Respondent urges the Court to dismiss Kuklinski's Petition as untimely.

The AEDPA provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

On December 22, 2005, the Appellate Division affirmed Kuklinski's judgment of conviction, *Kuklinski*, 805 N.Y.S.2d at 731, and the New York Court of Appeals denied Kuklinski's motion for reconsideration of that court's denial of his application for leave to appeal on August 2, 2006, *Kuklinski*, 855 N.E.2d at 805. His conviction therefore became final 90 days later, on November 6, 2006, the conclusion of the period during which Kuklinski could have sought certiorari review in the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). Kuklinski thus had one year from that date, or until November 6, 2007, to file his Petition with this

Court. *See* 28 U.S.C. § 2244(d)(1)(A).[3] Kuklinkski's Petition was not filed in this Court until November 14, 2016.[4]

An untimely petition is subject to dismissal. *Day v. McDonough*, 547 U.S. 198, 201 (2006); *Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010). The statutory limitations period under the AEDPA, however, may be tolled for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling bears the burden of establishing two elements: 1) "that he has been pursuing his rights diligently," and 2) "that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The determination is made on a case-by-case basis. *Holland*, 560 U.S. at 649-50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citations omitted). The threshold for a petitioner to establish equitable tolling is very high. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

---

[3] The statute of limitations period may be tolled during the pendency of a properly filed application for state post-conviction relief. *See* 28 U.S.C. § 2244(d)(2). In this case, however, Kuklinski's motion to vacate the judgment was filed approximately 7 years after the one-year AEDPA period expired. It thus did not "restart" the AEDPA limitations period. *See Smith v. McGinnis*, 208 F.3d 13, 15-16 (2d Cir. 2000) (stating that, "[i]f the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court," thus defeating the AEDPA's goal of preventing undue delays in federal habeas review).

[4] It is well established that incarcerated *pro se* litigants are deemed to have filed their federal papers on the date the papers were handed to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In the absence of evidence to the contrary, a federal court should assume that the application was delivered to the prison official on the date it was signed. *See Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 1999). Kuklinski's Petition indicates that it was signed and placed in the prison mailing system on November 14, 2016.

Here, Kuklinski did not reply to Respondent's answer and thus does not provide reasons as to why equitable tolling might apply. Accordingly, while this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, the Court must conclude that there are no extraordinary circumstances that warrant application of equitable tolling, and Kuklinski's Petition is untimely and is dismissed on that ground.

B. <u>Merits</u>

Even if Kuklinski's Petition were timely, he still would not be entitled to relief on it. As discussed below, the Court also denies relief on the merits of Kuklinski's claims.

Ground 1. *Involuntary Plea*

Kuklinski first argues that his attorney coerced him into accepting the plea deal by assuring him that he would get a 14-year determinate prison sentence to be followed by 5 years of post-release supervision. He received an imprisonment term of 24 years instead.

When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

Here, Kuklinski fails to show that his counsel unlawfully coerced him into accepting the plea. Not only does Kuklinski fail to produce any support for his assertion that plea counsel forced him to accept the plea, the record belies any such contention. Prior to accepting his plea, the court

8

obtained Kuklink's unequivocal statement that his plea was not induced by force or threat, and that he had not received any promise other than the one which the court described as follows:

> Now, with respect to a sentence that is to be imposed in this matter, I have indicated to your attorney based on the previous offer that was made by Judge Bruhn in this matter, that being 14 years—a definite sentence of 14 years in a state correctional facility followed by five years' post-release supervision, I have indicated to your attorney, that in no event were you to plead guilty to this charge, that you would receive less than 14 years plus five years post-release supervision. And it may be more. Do you understand that?

When asked whether he understood, Kuklinski answered affirmatively. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). An independent review of the record reflects that the plea was made voluntarily and intelligently. Kuklinski is therefore not entitled to relief on this grounds.

Ground 2.    *Erroneous Denial of Suppression Motion*

Kuklinski next argues that the trial court should have suppressed his statements to law enforcement because they were obtained in violation of his right to counsel.[5]

---

[5] In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). However, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975). Pursuant to CPL § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite being convicted upon a guilty plea. *See United States ex rel. Sanney v. Montanye*, 500 F.2d 411, 414 (2d Cir. 1974) (holding that habeas petitioner did not waive by guilty plea constitutional claims arising from "illegal interrogation," including a claim challenging admissibility of statements made without *Miranda* warnings). Because he sought to suppress the evidence prior to pleading guilty, Kuklinski has not waived his right to challenge the admissibility of that evidence through a habeas corpus petition. *See Perez v. Ercole*, No. 09 Civ. 2180, 2010 WL 2541974, at *4 n.3 (S.D.N.Y. June 22, 2010).

The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. The safeguards ensured by *Miranda* do not apply at all times, however. Spontaneous statements made by a defendant are not the product of an interrogation as defined by *Miranda*. *United States v. Vigo*, 487 F.2d 295, 300 (2d Cir. 1973); *see also United States v. Colon*, 835 F.2d 27, 28 (2d Cir. 1987) (*Miranda* inapplicable where the inculpatory statement is spontaneous and did not result from interrogation or its functional equivalent). Moreover, a person may validly waive his right to remain silent after receiving and understanding his *Miranda* rights. *Berghuis v. Thompkins*, 560 U.S. 370, 385-86 (2010). While the voluntariness of a confession involves a mixed question of fact and law, the factual findings which underlie a determination of voluntariness are entitled to a presumption of correctness under AEDPA. *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). That presumption extends to a state court's factual determinations that were not explicitly stated but can nonetheless be inferred from the court's legal conclusion. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997); *Smith v. Phillips*, 865 F. Supp. 2d 271, 279 (E.D.N.Y. 2012). A petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e). "Only if the material facts were not adequately developed by the state court, or the factual determination is not fairly supported by the record, may the district court set aside the presumption

of correctness." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 370 (E.D.N.Y. 2013).

In this case, the trial court held a suppression hearing at which Investigator Rieman testified that he advised Kuklinski of his *Miranda* rights on two separate occasions, and that Kuklinski did not invoke his right to remain silent or his right to counsel during the statement. According to Rieman, it was not until after the statement was completed that Kuklinski asked if he could call his attorney. Rieman replied that Kuklinski could call whoever he wanted. Rieman further testified that, although Kuklinski had his cell phone on him the entire time, he did not avail himself of the opportunity to contact an attorney. Rieman also testified that, after Kuklinski's statement was completed, he showed Kuklinski a written copy of the statement and advised him to read it and initial each page. Rieman testified that Kuklinski denied that he had been forced or coerced into making the statement or that any promises had been made to him in exchange for the statement.

Kuklinski's testimony at the hearing greatly differed. He claimed that he asked to speak with his attorney five times prior to signing his statement and that he used his cell phone to try and reach his attorney. Kuklinski also denied being read his *Miranda* warnings.

Here, the totality of the evidence presented during the hearing demonstrated ample support for the finding that Kuklinski did not invoke his right to counsel and that his statements to police were voluntary. As the Appellate Division explained:

> County Court properly denied [Kuklinski's] suppression motion. The suppression court's credibility determinations and choice between conflicting inferences to be drawn from the proof are granted deference and will not be disturbed unless unsupported by the record. The court here disbelieved [Kuklinski's] testimony that he was never read his *Miranda* rights, was locked in an interview room for long periods of time, requested to leave five or six times, signed his statement without reading it, was promised he could go home if he signed the statement, and specifically requested his attorney five times. [Kuklinski's] signed statement included his initials by each of his *Miranda* rights and at the bottom of each

page, as well as his full signature after his *Miranda* rights and at the end of the statement. A police investigator testified that [Kuklinski] made calls on his cellular phone while the investigator was out of the room. The investigator did not recognize the name that [Kuklinski] mentioned as being the name of a local defense attorney, and [Kuklinski] did not identify him as such. When [Kuklinski] asked the investigator if he could call his attorney, the investigator told [Kuklinski] such a call was permitted; [Kuklinski] retained possession of his cellular phone but did not make the call. These circumstances support the court's determination that [Kuklinski] did not unequivocally assert his right to counsel—thus his right to counsel did not attach—and he instead waived that right by proceeding with the interview and signing a waiver of his rights.

*Kuklinksi*, 805 N.Y.S.2d at 730-31 (citations omitted).

His bald assertions challenging the state court's credibility determination are nothing more than an attack on the testimony of the police officer. But Kuklinski misperceives the role of a federal court in a federal habeas proceeding attacking a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. This Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the finding of fact. *See Schlup*, 513 U.S. at 330. In the absence of clear and convincing evidence to the contrary, this Court is bound by the factual findings of the state court which concluded that he offered his challenged statements, which were the subject of custodial interrogation, only after being advised of his rights to remain silent and to have the assistance of an attorney and subsequently waiving those rights. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. His bare assertions to the contrary do not constitute clear and convincing evidence sufficient to rebut the presumption of correctness that this Court must afford the state court's finding that Kuklinski's statements were voluntarily made. Kuklinski is therefore not entitled to relief on this claim.

Ground 3.     *Harsh and Excessive Sentence*

Finally, Kuklinski complains that his sentence was harsh and excessive and should be reduced in the interest of justice. The Appellate Division considered and rejected this claim on direct appeal as follows:

> [Kuklinski's] sentence is not harsh or excessive. The record does not support [Kuklinski's] contention that a plea bargain existed. [Kuklinski] acknowledged in a motion affidavit that he faced a maximum of 25 years in prison on the top count. At the time of the plea, County Court recognized that a prior judge had discussed a 14–year sentence, but the court, prior to the plea, informed [Kuklinski] that his sentence would be at least that long and "may be more." [Kuklinski] thereafter affirmed his desire to plead guilty. [Kuklinski] sexually abused an eight-year-old boy, had two previous convictions for similar sex offenses against children, was a registered sex offender at the time of this offense and should not have been around children, yet still continued to be alone with children even while these charges were pending. Thus, the court's imposition of a 24–year aggregate sentence was appropriate.

*Kuklinski*, 805 N.Y.S.2d at 731 (citations omitted).

It is well-settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Here, under New York Penal Law §§ 70.07(4)(c) and (e), the court was required to sentence Kuklinski to a determinate sentence of between 12 and 30 years on the sodomy count, and between 5 and 15 years on the sexual assault count. Kuklinski's concurrent determinate imprisonment terms of 24 years for the sodomy count and 15 years for the sexual assault count are within those ranges. Likewise, the endangering the welfare of a child and forcible touching counts are Class "A" misdemeanors for which a maximum definite sentence of 1 year is authorized. *See* N.Y. PENAL LAW

§ 70.15(1). Because Kuklinski's sentence fell within the state's statutory guidelines, a harsh and excessive sentence claim is not cognizable on federal habeas review.

Kuklinski also argues that he was "promised" a determinate imprisonment term of 14 years in exchange for his guilty plea. But any claim that the plea agreement was violated is belied by the transcript of plea allocution in which Kuklinski was advised, and confirmed that he understood, that the judge would not impose less than 14 years in any event, but that "it may be more."

And to the extent that Kuklinski's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under

Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Kuklinksi is therefore not entitled to relief on his sentencing claim in any event.

## V. CONCLUSION

Kuklinski is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 22, 2017.

                                             /s/ James K. Singleton, Jr.
                                             JAMES K. SINGLETON, JR.
                                             Senior United States District Judge